IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Benjamin J. Jackson, III,              )<br>                                              )<br>                       Plaintiff,     )<br>                                              )<br>vs.                                         )<br>                                              )<br>Sheriff H. Wayne DeWitt, et al.,   )<br>                                              )<br>                       Defendants. )<br>_____) | Civil Action No. 6:10-cv-3128-RMG-KFM<br><br>**REPORT OF MAGISTRATE JUDGE** |

This matter is before the court on the defendants' motion for summary judgment (doc. 53). The plaintiff, a detainee proceeding *pro se*, seeks relief pursuant to Title 42, United States Code, Section 1983. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under Section 1983 and submit findings and recommendations to the district court.

On July 1, 2011, the defendants filed a motion for summary judgment. By order filed July 5, 2011, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. The plaintiff filed his response in opposition on September 6, 2011.

**FACTS PRESENTED**

The plaintiff is an inmate at the Berkeley County Detention Center ("BCDC"). He is currently being held on charges of failure to stop for blue lights, possession of firearm during a violent crime, burglary, grand larceny, kidnaping, and armed robbery. He is also being held on a Charleston County probation violation and has a warrant for his arrest for

simple assault from Fulton County, Georgia. The plaintiff has been in the BCDC since June 2, 2010.

## **APPLICABLE LAW AND ANALYSIS**

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will

properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248.

The plaintiff, who claims to be a "Moorish American" under the "Zodiac Constitution," brings this action alleging violations of his constitutional rights while incarcerated at the BCDC. The plaintiff's claims arise from his allegations that (1) he was refused breakfast on one occasion; (2) the BCDC does not have a "grievance line"; (3) guards fight inmates and neglect them; (4) there are no medical services at the jail; (5) officers pass out inmates' medication, and they give wrong medicines; he has never received his blood pressure medication; (6) he was bitten by a spider and received no medical attention; (7) he was deprived of rights to get legal paperwork; (8) he was told they have a law library, but has not seen one; (9) he can only get religious reading materials; (10) there is a GED program, but only for females; (11) the BCDC is overcrowded; (12) he can only clean his cell once a week; (13) there is mildew, mold, and lead paint in the shower, and the drain backs up; (14) there are cameras in the holding cells pointing at the toilets and showers; (15) the BCDC returns photos and personal mail to sender for no reason; (16) the BCDC will reject visitors if visitor is one minute late; (17) the BCDC is charging indigent inmates for indigent packages; (18) an inmate has to be "about dead" to go to the hospital; (19) the BCDC feeds inmates spoiled or soured food, and they feed inmates the same type of food every day. Summary judgment is appropriate on each of these claims as discussed below.

### *Breakfast*

On October 11, 2010, the plaintiff and inmates on lower B pod had their cell doors opened so that they could exit and get their breakfast. The cell doors remained open for a period of time so inmates could exit. The plaintiff and another inmate remained on their bunks. Both were instructed to come to the common area of the pod to eat breakfast, but they did not do so. The cells were secured while breakfast was served. When the cells

3

were reopened so that other inmates could return to their cells after breakfast, the plaintiff and another inmate exited their cells complaining that they did not eat (def. m.s.j., ex. C). As argued by the defendants, the BCDC does not provide meal service on demand to inmates. They are fed at designated times, and if they choose not to eat at that time, then they are required to wait until the next meal. The evidence before this court shows that the failure to get breakfast was solely the fault of the plaintiff, and the defendants are entitled to summary judgment on this claim.

*Reading Materials*

The plaintiff alleges that he is only allowed to have religious reading material and that he was told there was a law library, but there is not one. Since before the plaintiff was booked into the BCDC, inmates have been permitted to have the primary text of their religion, no matter what their religion may be. Additionally, there is a list of books that is contained on the commissary order form, including the Holy Bible, the Koran, crossword puzzle books, word find books, and several novels (def. m.s.j., ex. D). According to the affidavit of Sergeant Kris Jacumin, there is no record that the plaintiff has ever ordered a book from the commissary list (*id.*, ex. F, Jacumin aff. ¶ 6). In 2011, the policies have been changed to also allow inmates or their families to order books and magazines from publishers and book sellers to be sent directly from the store or publisher to the inmates (*id.* ¶ 7). The magazines Prison Legal News, Crutchfield, and East Bay were delivered to the BCDC for the plaintiff, but were rejected by the staff because the publications were bound with staples, which is against regulations (*id.* ¶ 9; *see* def. m.s.j., ex. E, Inmate Correspondence Policy). The plaintiff appealed the rejection of Crutchfield and East Bay, but it was upheld. He did not appeal Prison Legal News (Jacumin aff. ¶ 9). The plaintiff receives Motor Trend magazine (*id.* ¶ 10).

The plaintiff's law library claim also fails. This allegation does not raise a cognizable Section 1983 claim because there are no allegations of any specific injury the

4

plaintiff suffered because of inadequate access to legal materials while in detention. *See Lewis v. Casey*, 518 U.S. 343, 349 (1996) (holding that prisoner must demonstrate that a non-frivolous legal claim had been frustrated or was being impeded). Based upon the foregoing, the defendants are entitled to summary judgment on these claims.

*Mail*

The plaintiff alleges that photos and personal mail sent to him are being returned for "no reason." However, he has failed to provide copies of the returned envelopes or give any information about what was in the photos or letters. The BCDC inmate correspondence policy provides that correspondence containing certain items, including inappropriate photos, will be rejected and returned to sender (def. m.s.j., ex. E). Because the plaintiff has not given the court any evidence to show that the photos did not contain inappropriate images, the defendant is entitled to summary judgment on this cause of action.

***Medical Claims***

The plaintiff alleges that the detention officers pass out medications to the incorrect inmates and that during his incarceration he has not received any of his medications. Additionally, he alleges that there are no medical services at the jail. This claim is without merit.

The standard for reviewing medical claims of pretrial detainees under the Fourteenth Amendment is essentially the same as that for a convicted prisoner under the Eighth Amendment—deliberate indifference to serious medical needs. *Hill v. Nicodemus*, 979 F.2d 987, 991 (4th Cir.1992). Not "every claim by a prisoner [alleging] that he has not received adequate medical treatment states a violation of the [Constitution]." *Estelle v. Gamble*, 429 U.S. 97, 105 (1976). The government is required to provide medical care for incarcerated individuals. *Id*. at 102. However, to establish deliberate indifference, the treatment "must be so grossly incompetent, inadequate or excessive as to shock the

5

conscience or to be intolerable to fundamental fairness." *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir.1990).  Mere negligence, malpractice, or incorrect diagnosis is not actionable under 42 U.S.C. § 1983. *See Estelle*, 429 U.S. at 106. Further, while the Constitution requires a prison to provide detainees with medical care, it does not demand that a prisoner receive the treatment of his choice. *Jackson v. Fair*, 846 F.2d 811, 817 (1st Cir.1988).   "[A detainee's] mere difference of opinion over matters of expert medical judgment or a course of medical treatment fail[s] to rise to the level of a constitutional violation." *Nelson v. Shuffman*, 603 F.3d 439, 449 (8th Cir.2010) (internal quotation marks and citation omitted).

In order to state a claim, "[a] plaintiff must satisfy two elements ...: he must show a serious medical need and he must prove the defendant's purposeful indifference thereto." *Sires v. Berman*, 834 F.2d 9, 12 (1st Cir.1987).  A medical need is "serious" if "it is diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would recognize the necessity for a doctor's attention." *Gaudreault v. Municipality of Salem, Mass.*, 923 F.2d 203, 208 (1st Cir.1990).   "[D]eliberate indifference entails something more than mere negligence [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994). *See also Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir.1996) (noting that "the subjective component requires proof of more than mere negligence but less than malice").

During regular business hours, there is a nurse on duty at the BCDC.  The nurse is on call on weekends for minor medical care, and she is notified if there is an incident or an inmate in need of care.  If there is an emergency at the BCDC, the detention officers call EMS to transport the inmate to the hospital.  The nurse is also notified. However, EMS is not called for routine matters that can be handled the next day when the nurse is on duty (def. m.s.j., ex. G, Brabham aff. ¶¶ 2-6).

6

According to Sue Brabham, the nurse at BCDC, inmate medications are placed into envelopes with the inmate's name and cell number on them (*id.* ¶ 9). The staff who hand out medication signs off on the medication log when the medication is provided. If an inmate refuses his medication, that is also documented (*id.* ¶ 8). Nurse Brabham is familiar with the plaintiff. He receives a diuretic, which is a small peach colored pill, every day. According to her records, he did not come in with any medication, but was placed on the diuretic by the jail doctor due to high blood pressure. Therefore, though the plaintiff may believe that he is getting the wrong medication because it does not look exactly like the pills he was taking prior to his incarceration, the medication he is now provided does the same thing and is on the BCDC's formulary. At no time has the plaintiff ever contacted Nurse Brabham to advise her that he is not receiving medication or receiving incorrect medication (*id.* ¶¶ 9-11).

The plaintiff also claims that he was bitten by a spider and received no medical attention (comp. at 4). During her employment at the jail, Nurse Brabham has never seen or treated an inmate for an actual spider bite (Brabham aff. ¶ 12). She states that inmates will sometimes develop a bumpy rash from either the wool in the blankets or the different detergent that is used at the BCDC or they might get an ingrown hair. Many times, these are the things that inmates refer to as "spider bites" (*id.* ¶ 13). Here, there is no record that the plaintiff ever made a request to see medical regarding an alleged spider bite (*id.* ¶ 17).

Based upon the foregoing, there is absolutely no evidence that the defendants were deliberately indifferent to the plaintiff's serious medical needs. Accordingly, summary judgment is appropriate on these claims.

## *Overcrowding*

The plaintiff complains that his cell is too crowded. To prevail on a conditions of confinement claim, a pretrial detainee must show either (1) an expressed intent to punish, or (2) lack of a reasonable relationship to a legitimate nonpunitive governmental

objective, from which a punitive intent may be inferred. *Hill v. Nicodemus*, 979 F.2d 987, 991 (4th Cir.1992) (citing *Martin v. Gentile*, 849 F.2d 863, 870 (4th Cir.1988)).

Regular cells in the BCDC house up to four inmates. The plaintiff has been provided with a mattress and a blanket, and he has also been provided with either a bunk bed or a "stack-abunk," which is a plastic bed frame so that the inmate will not have to sleep with his mattress directly on the floor (Jacumin aff. ¶¶ 3-4).

The plaintiff has failed to show that the defendants actually knew of and disregarded a substantial risk of serious injury to him, that he was deprived a "basic need," and that this deprivation was attended by deliberate indifference on the part of the defendants, *Strickler v. Waters*, 989 F.2d 1375, 1379 (4th Cir. 1993), or that the defendants had an express intent to punish him. *Hill*, 979 F.2d at 991. The conditions complained of by the plaintiff do not rise to a constitutional violation, and summary judgment is appropriate on this claim. *See Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th Cir.1985) (finding no viable claim where pretrial detainee temporarily had to sleep on a mattress on the floor because such conditions do not necessarily rise to the level of a constitutional violation).

### *Cleaning of Cells*

The plaintiff alleges that he is only permitted cleaning supplies to clean his cell once a week. Such an allegation fails to raise to the level of a constitutional violation. Nonetheless, the defendants have provided evidence that cleaning supplies are given to inmates in cells like the plaintiff's (i.e. cells with four or fewer inmates), three times per week. (Jacumin aff. ¶ 16). Based upon the foregoing, this claim fails.

### *Food*

The plaintiff asserts that his food is spoiled and that he is served the same food every day. According to Sergeant Jacumin, the food at the BCDC is stored and prepared properly, and inmates are never served food that has spoiled. There is also a menu and a schedule for the foods that are served to the inmates. They do not receive the

same food every day. Sergeant Jacumin has received no written complaints regarding spoiled food, and the plaintiff has never made such a complaint (Jacumin aff. ¶¶ 13-14). The plaintiff makes no specific allegations about dates or specific foods that he claims were spoiled. The plaintiff has not stated any constitutional violation, and therefore the defendants are entitled to summary judgment on this allegation.

### *Legal Paperwork*

The plaintiff claims that he has been deprived of the right to get legal paperwork, but has provided no specifics. He does not provide dates, time or specifics about what he claims he was prevented from receiving. Nor has he made grievances or requests to staff about the "legal paperwork." Additionally, as to the plaintiff's allegation that the staff does not respond "enough" to his grievances, it is well settled that inmates and detainees have no constitutional right to a grievance procedure. *See Adams v. Rice*, 40 F.3d 72 (4th Cir.1994). The plaintiff's claim in this regard fails to state a claim for a constitutional violation.

### *No GED Classes*

The plaintiff alleges his rights have been violated because no GED classes are offered at the BCDC for the male inmates. There is no constitutional requirement that a primarily pre-trial holding facility offer such a program. Accordingly, this claim fails.

### *Visitors*

The plaintiff claims that the BCDC rejects visitors who are one minute late. Visitation at the BCDC is a major security issue and is a highly regulated and organized procedure. Visitors must be checked, and inmates must be retrieved from their units. It is made very clear that visitors to the jail are to be present at a specific time in order to be processed and admitted for visitation. If visitors are late, they are not permitted to participate in visitation (Jacumin aff. ¶12). The plaintiff's allegation regarding this reasonable requirement fails to state a claim for a constitutional violation.

***Indigent Packages***

The plaintiff complains that inmates are charged for indigent packages. In order to be indigent, an inmate must not have any money in his inmate account to make purchases from the commissary. If an inmate has a zero balance in his account, he or she is permitted to "purchase" an indigent package, which contains toiletries and such. The cost for the indigent package is debited against the account of the inmate. If the inmate never gets any money in his or her account, he or she is not responsible to pay it back. However, if the inmate does make a deposit into the account, then the value of the indigent package is deducted. As noted by Sergeant Jacumin, the BCDC does not refuse to provide the supplies to indigent inmates. Instead, the BCDC is protecting itself against inmates who would claim indigence in order to get free supplies and then make a deposit so they can buy "goodies" like candy and snacks from the commissary (Jacumin aff. ¶¶ 17-19). The plaintiff has failed to show a violation of his constitutional rights in this regard.

***Grievance Line***

The plaintiff complains that the BCDC does not have a "grievance line." As noted above, it is well settled that inmates and detainees have no constitutional right to a grievance procedure. *See Adams*, 40 F.3d at 75. Furthermore, the plaintiff has used the BCDC's grievance procedure. He completed a grievance form on November 10, 2010, and it was received and responded to by Sergeant Jacumin on November 12, 2010 (def. m.s.j., ex. B). Therefore, this claim is completely without merit and should be dismissed.

***Other Claims***

To the extent that the complaint may be construed to allege any other constitutional violations, the court finds that the plaintiff has failed to plead sufficient facts to state a plausible claim. *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

*State Law Claims*

Having found that the defendants are entitled to summary judgment regarding the plaintiff's constitutional claims, it is recommended that the court decline to exercise supplemental jurisdiction over any claims for relief asserted pursuant to state law. See 28 U.S.C. § 1367(c) (3).

## CONCLUSION AND RECOMMENDATION

Now, therefore, based upon the foregoing,

IT IS RECOMMENDED that the defendants' motion for summary judgment (doc. 53) be granted.

s/ Kevin F. McDonald<br>
United States Magistrate Judge

December 5, 2011
Greenville, South Carolina

11

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 300 East Washington St, Room 239
> Greenville, South Carolina 29601

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).